UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
JOSE L. VELESACA and ABRAHAM CARLO :
UZATEGUI NAVARRO, on his own behalf and :
behalf of others similarly situated, : **ORDER DENYING MOTION TO**
: **MODIFY AND CLARIFY**
Petitioners-Plaintiffs, : **PRELIMINARY INJUNCTION**
:
-against- : 20 Civ. 1803 (AKH)
:
THOMAS R. DECKER, in his official capacity as :
New York Field Office Director for U.S. :
Immigration and Customs Enforcement; :
MATTHEW ALBENCE, in his official capacity as :
the Acting Director for U.S. Immigration and :
Customs Enforcement; UNITED STATES :
IMMIGRATION AND CUSTOMS :
ENFORCEMENT; CHAD WOLF, in his official :
capacity as Acting Secretary of the U.S. Department :
of Homeland Security; UNITED STATES :
DEPARTMENT OF HOMELAND SECURITY; :
CARL E. DUBOIS, in his official capacity as the :
Sheriff of Orange County, :
:
Respondents-Defendants. :
-------------------------------------------------------------- X
ALVIN K. HELLERSTEIN, U.S.D.J.:

       The government moved for clarification and modification of my order of March 31, 2020, preliminarily enjoining the New York Field Office of United States Immigration and Customs Enforcement ("ICE") from detaining nearly all aliens it arrested, without bond and without considering if the person arrested posed a risk of flight or a danger to the community. I found that the statistics of detentions following arrests, before and after June 6, 2017, clearly showed that ICE had changed its policy without announcing a change. *See* ECF No. 67. I granted the preliminary injunction and made findings and conclusions immediately following

1

argument, and explained my reasoning more fully in my written decision of May 4, 2020. *See* ECF No. 78.

The government argues that the preliminary injunction is insufficiently specific as to what ICE must do, unduly broad as to its coverage, and not applicable to persons detained as of April 10, 2020. I denied the government's motion and gave my reasons immediately following argument of the motion, followed by a summary order. ECF No. 84. I write to give a fuller explanation of my decision.

## Background

A. The Injunction

I granted the following preliminary injunction, orally on March 30, 2020 and, by written summary order thereafter:

> The Court grants preliminary injunctive relief, enjoining Defendant Thomas R. Decker in his official capacity as New York Field Office Director for U.S. Immigration and Customs Enforcement ("ICE"), and all successors appointed or acting, from using or applying practices or policies relating to the discretion by ICE officers to release to the community on recognizance or pursuant to bond, under … 8 U.S.C. § 1226(a), and all applicable implementing regulations, to any person now or hereafter arrested by Defendants or officers or agents directly or indirectly supervised by Defendants, in any manner more stringent or more onerous than those used or applied prior to June 6, 2017.
>
> This order shall not apply to any person so arrested who has had his bond or recognizance application heard by an immigration judge.
>
> The injunction required the government to file a supplementary of compliance:
>
> Defendant shall file a report on April 17, 2020 identifying, as of April 10, 2020, all persons thus arrested or under the authority of ICE's New York Field Office and, of such persons, all such persons who have had their bond or recognizance application heard by an immigration judge.

ECF No. 67, at 1-2. Both parties represented, after hearing the terms of the injunction, that the injunction had "touched on everything that needs to be said." ECF No. 68, at 53:14-18.

2

Pursuant to Rule 65(d) of the Federal Rules of Civil Procedure, the preliminary injunction was supported by findings and conclusions, first stated orally at the conclusion of argument and then explained more fully by written decision.  ECF Nos. 67, 78.  The government had denied that there had been any change of policy regarding detentions after arrest and before a bond hearing, contending that it consistently had provided individualized determinations, based on risks of flight and danger to the community, as required by 8 U.S.C. § 1226(a).  The facts showed otherwise, as I made clear in both my oral and written findings.

B. The Government's Compliance with the Injunction

As the injunction required, on April 17, 2020, the government filed its report, representing (a) the number of all aliens detained pursuant to 8 U.S.C. § 1226(a) as of April 10, 2020, (b) of those detained, the number of aliens who have had bond hearings before an immigration judge, and (c) and further representing that ICE, since the order's issuance, had taken steps to ensure that all aliens receive an individualized bond hearing.  See ECF No. 70, at 1-2.  The government's report stated:

> As of April 10, 2020, there were 159 aliens detained by ICE's New York Field Office pursuant to § 1226(a).  40 of those aliens had bond hearings before an immigration judge, and 119 had not had a bond hearing.  Of the 119 aliens who had not yet had a bond hearing, 21 aliens withdrew requests for a bond hearing, and at least 1 alien appeared for a bond hearing but refused to proceed on the asserted basis that he is a *Velesaca* class member.

*Id.* at 2 (citations omitted).  ICE then described the steps that it had taken to improve its internal protocols, in order to comply with the preliminary injunction and the governing law, 8 U.S.C. § 1226(a):

> ICE's New York Field Office … has taken the following steps since this Court issued the preliminary injunction.  Deputy Field Office Director William Joyce

3

>
> issued guidance concerning a new process for officers to complete to ensure that all aliens detained by ICE's New York Field Office under 8 U.S.C. § 1226(a) receive an individualized custody determination in compliance with the statute and its implementing regulations. This is a work in progress, particularly given the current focus of resources on the COVID-19 pandemic, and the New York Field Office is still working on finalizing a process to apply to such cases going forward. A significant aspect of this process will involve a worksheet for the officers to complete to assist the officers in evaluating danger to the community and risk of flight. The intent is for the officers to document that there was an individualized determination. Attorneys from ICE's Office of the Principal Legal Advisor will be providing trainings to officers in ICE's New York Field Office on conducting individualized custody determinations, and have already conducted one such training to the Supervisory Detention and Deportation Officers.

*Id.* at 1 (citations omitted).

Plaintiffs complained that the government's report did not make clear if the custody determinations made by ICE extended to those detained as of April 10, 2020, the members of the class on whose behalves the lawsuit had been filed. Plaintiff's letter of April 27, 2020, asked the court to direct ICE to make custody determinations, not only for persons detained after April 10, 2020, but also for those detained as of April 10, 2020, 108 in number:

> We write … to request an instruction directing ICE to identify whether members of the class in this case have received the custody redetermination that this Court previously ordered. While ICE identified a large number of detained class members in its April 17th letter, its correspondence suggests that no class members on ICE's list have received a redetermination, and the petitioners' repeated attempts to get that information have failed.
>
> ….
>
> The preliminary injunction applies to all people who have been or will be arrested by ICE's New York Field Office and are entitled to an individualized consideration of whether they should receive release to the community on recognizance or pursuant to bond, under 8 U.S.C. § 1226(a), except for anyone who has had his bond or recognizance application heard by an immigration judge. According to ICE's report, as of April 10th, there were at least 108 such individuals currently detained in ICE jails. But the report does not state whether any of them has yet received the custody determination to which they are entitled.

ECF No. 71, at 1-2 (quotations, citations, and alterations omitted).

4

The government conceded that "ICE has not re-determined custody for putative class members," ECF No. 73, at 1, and moved to clarify that it did not have this obligation. The government contended that the court's injunction is insufficiently specific to enable it to comply, although it seemed to have had no problem in applying the injunction to persons detained after April 10, 2020.

I held, following argument, that the injunction was intended to apply, and did apply, to persons detained as of April 10, 2020. The injunction stated that it applied "to any person now or hereafter arrested." Its application to persons detained as of April 10, 2020 is plain, and requires no further clarification. From the absence of any further complaint by plaintiff or remonstrance by the government, the issue now seems academic. I assume that all persons in plaintiffs' class, and that all persons thereafter detained, have been given individualized bond determinations, and that this will continue.

C. The Government's Motion to Modify and Clarify the Injunction Order

The government contends that the order is insufficiently specific to satisfy Rule 65(d), Fed. R. Civ. P., exceeds the scope of relief available under the Administrative Procedure Act and 8 U.S.C. § 1252(f)(1), and intrudes on the discretion of the Executive Branch. *See* ECF No. 75, at 1. The government's contentions lack merit.

**Discussion**

Federal Rule of Civil Procedure 65(d) provides that "[e]very order granting an injunction … must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail, and not by referring to the complaint or other document, the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). An injunction must be "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *City of*

5

*New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 143 (2d Cir. 2011) (quoting *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240-41 (2d Cir. 2001)). The enjoined party must be able to ascertain "from the four corners of the order precisely what acts are forbidden or required." *Id*. at 144 (quotation marks omitted). However, an excess of literalism is not required; the import of otherwise ambiguous language may become clear "when it is read in the context of the entire injunction and of the judge's decision upon issuing the injunction." *In re Baldwin-United Corp.*, 770 F.2d 328, 339 (2d Cir. 1985). An injunction should be "no broader than necessary to cure the effects of the harm caused by the violation," and "narrowly tailored to fit specific violations." *Mickalis Pawn Shop*, 645 F.3d at 144.

The basis of the government's argument of indefiniteness is its persistent denial that there was a radical difference in its detention policies, before and after June 6, 2017. ICE's own statistics show this difference. Before June 2017, around 30 percent of detained aliens were released to the community. After that date, around 2 percent were released. The government never has been able to explain the difference. There is no basis to believe that persons detained prior to June 2017 posed greater, or lesser, risks of flight or danger to society, than persons detained after June 2017. The inference is compelling that a change in ICE's practices, before and after June 2017, explains the dramatic change in statistics of detention.

In light of the government's refusal to explain its change in practice in or about June 2017, there is no better way to define the practice that is enjoined than that stated in the injunction—"using or applying practices or policies relating to the discretion by ICE officers to release to the community on recognizance or pursuant to bond, under … 8 U.S.C. § 1226(a),  . . in any manner more stringent or more onerous than those used or applied prior to June 6, 2017."

6

Section §1226(a) requires detention officers to make individualized custody determinations following arrest and detention. The decision must be made by the detaining officer; it cannot be deferred until hearing and determination by an Immigration Judge, a process that can takes weeks or months. The failure of detention officers to make this determination after June 6, 2017, except in fewer than two percent of cases, tantamount to a "no release" policy, is the specific violation that the preliminary injunction seeks to remedy. The injunctive restraint is no broader than is necessary to remedy the government's violation of statute. Government counsel made no complaint or suggestion of modification when, after a recess following argument of the motion, I stated the language of the injunction. Indeed, the affirmative action taken by ICE to comply with the injunction, to "ensure that all aliens detained … receive an individualized custody determination," is itself testament to the ability of the government to understand the injunction, and to comply with it. See ECF No. 70, at 1.

The government's offer of substitute language, set out in the footnote, requires nothing more than that the government should obey the law; it says nothing about the conduct, violative of the law, that is to be enjoined.[1] The government's formulation is useless.[2]

The remaining arguments of the government lack merit. The government argues that the injunction, rather than restraining conduct, orders it to provide redeterminations of persons arrested and detained as of April 10, 2020 and is therefore a mandatory injunction.

---

[1] The full language proposed by the government is as follows: "The Court grants preliminary injunctive relief, enjoining the New York Field Office for U.S. Immigration and Customs Enforcement ('ICE') from making initial custody determinations in a manner inconsistent with 8 U.S.C. § 1226(a) and applicable implementing regulations. Specifically, ICE's New York Field Office is enjoined from using or applying practices or policies relating to such initial custody determinations that are inconsistent with 8 U.S.C. § 1226(a) and applicable implementing regulations, such as a policy or practice of denying release as a blanket matter without making individualized determinations on a case by case basis." ECF No. 75, at 9.

[2] If the government wishes to change detention policies, it must comply with notice-and-comment rule-making procedures set forth in the APA.

However, the boundary between negative injunctions and mandatory injunctions is not set by whether the enjoined party is forced to act, *see, e.g. Mastrio v. Sebelius*, 768 F.3d 116, 120-21 (2d Cir. 2014) (noting that "preserving the status quo is not confined to ordering the parties to do nothing: it may require parties to take action"), but by whether the injunction alters the "status quo," *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). And, in this context, the status quo is "the last actual, peaceable uncontested status which preceded the pending controversy," *id*. (quotation marks omitted); here, the time before the change in government policy and practice.

The rest of the government's arguments, that the injunction exceeded the bounds of permissibility under the Administrative Procedure Act, and that it intruded on the Executive's Article II discretion was adequately discussed in my previous opinion, and need not be restated.

## Conclusion

For all the reasons stated on the record at oral argument and explained more fully in this opinion, Defendants' motion for modification and clarification is denied. The parties are directed to appear for a telephonic status conference on August 25, 2020, at 11:00 a.m., in order to chart a course for the remainder of this litigation.

SO ORDERED.

Dated:   July 6, 2020              _____/s/_____
         New York, New York              ALVIN K. HELLERSTEIN
                                         United States District Judge